In the
**UNITED STATES DISTRICT COURT**
for the **SOUTHERN DISTRICT OF INDIANA**,
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **MARY DAUGHERTY; DANIEL SHUE; DANIEL WALDEN; WILLIAM JOHNSON; LORRAINE JOHNSON;** and **BRIAN McWHIRT**, individually and as representatives of certified classes nos. 1 and 2, <br><br> Plaintiffs, <br><br>  vs. <br><br> **E. MITCHELL ROOB, JR.**, in his capacity as Secretary of the Family and Social Services Administration, and **JEFFREY WELLS, M. D.**, in his capacity as Director of the Office of Medicaid Policy and Planning, Family and Social Services Administration of the State of Indiana, <br><br> Defendants. | CAUSE NO. 1:06-cv-878-SEB-DML |

**E N T R Y**

**Plaintiffs' Motion for Summary Judgment (doc. 154)
Defendants' Motion for Summary Judgment (doc. 150)
Plaintiffs' Request for Oral Argument (doc. 157)**

Plaintiffs challenge Defendants' administration of the "spend-down" provision of the Medicaid program in Indiana, alleging that it violates the federal and Indiana constitutions, statutes, and regulations. The legal foundations of the Medicaid system in Indiana have been explained in recent decisions, *see*, *e.g.*, *Thompson v. Roob*, Cause no. 1:05-cv-636-SEB-VSS, Entry on Plaintiffs' Motion for Summary Judgment, 2006 WL 2990426 (S.D. Ind., Oct. 19, 2006); *Steele v. Magnant*, 796 F.Supp. 1143, 1146-47 (N.D. Ind. 1992), and there is no dispute

about them in this case. Briefly, in return for receiving federal matching funds for the Medicaid program, Indiana must follow a federally-approved state administrative plan that complies with federal procedural and substantive requirements. 42 U.S.C. § 1396 *et. seq.*; 42 C.F.R. § 430 *et seq.*; Ind. Code Ann. § 12-15-1 *et seq.* (LexisNexis 2006); 405 Ind. Admin. Code 2-1-1 *et seq.* (2003 and 2008 Cum. Supp.). The Family and Social Services Administration's Office of Medicaid Policy and Planning ("FSSA") administers the Medicaid program in Indiana. I.C. § 12-8-6-3. Among other criteria (not at issue in this case) for Medicaid-benefits eligibility in Indiana is a monthly income limit of $603 for an individual and $904 for a couple.[1] If a Medicaid applicant or recipient has monthly income that exceeds these limits, he may receive Medicaid benefits once his excess income is completely offset by incurred medical expenses for which he is responsible. 405 I.A.C. 2-3-10. In other words, he must first "spend down" his excess income on medical expenses before he would be eligible for Medicaid benefits. The amount by which his monthly income exceeds the eligibility limit is termed his "spend down obligation" in the regulations. *Id.*[2]

At the time of the complaint, a person had to be enrolled in the spend-down program in order to receive benefits. Enrollment was obtained by submitting to FSSA documentation of ongoing and/or anticipated monthly medical bills that would exceed the applicant's spend down obligation. 405 I.A.C. 2-3-10(b). In addition, already-enrolled spend-down beneficiaries

---

[1] These were the limits described in the 2006 complaint. In their August 2008 briefing on the present motions, Defendants represent the current limits as $637 for an individual and $956 for a couple. The limits are indexed annually to changes in federal Supplemental Security Income benefits. 405 I.A.C. 2-3-18(b).

[2] Synonymous terms are "surplus income," "excess income," and "spend-down amount." (Plaintiffs' Supporting Brief at 5 n. 1).

underwent annual enrollment re-evaluations by the same process of providing verification of ongoing and/or anticipated medical bills that exceed monthly income limits.[3] These enrollment determinations were not precise processes in part because (1) eligibility is determined on the basis of when a medical bill is *incurred* by an applicant or enrollee, not when the provider bills the patient, when the patient pays, or when the provider submits its bill to Medicaid, and medical providers have one year in which to submit bills to Medicaid; (2) Medicaid will pay only after a patient's private insurer, or other responsible party, pays its share of the bill; and (3) applicants or enrollees can also qualify based on anticipated medical expenses in the future. Thus, FSSA caseworkers and spend-down clerks often had to make enrollment determinations based on predictions of third-party coverage, anticipated expenses, and incurred or ongoing expenses for which there wasn't final documentation. In January 2006, FSSA computerized its processing of provider-submitted medical bills allowing pay-out decisions to be made on fully-processed claims; however, enrollment evaluations of applicants and re-evaluations of existing enrollees were still made "manually" by caseworkers based on submitted proofs and predictions of bills and coverages.

Plaintiffs are six individuals whose Medicaid spend-down enrollment applications were denied by FSSA or whose enrollments were terminated or benefits were reduced following eligibility re-evaluations by FSSA. They challenge two aspects of FSSA's administration of the Medicaid spend-down program: its processes for making enrollment determinations and its processes for appeals. First, they allege that its enrollment determinations are not governed by

---

[3] Apparently, while a beneficiary was enrolled in the spend-down program, Medicaid paid his medical expenses that exceeded his pre-determined spend-down amount regardless of his monthly income, until his annual re-evaluation.

ascertainable standards and that its notices of determinations are inadequate. According to Plaintiffs, FSSA's notices of negative determinations misstate the governing standards, fail to provide the facts or data upon which the decisions are based, fail to give reasons for the decisions, and are unreadable and unintelligible, thus not affording applicants and beneficiaries meaningful opportunities to submit additional information or appeal the decisions. In addition, FSSA caseworkers are poorly trained and FSSA's governing rules and instructions are inconsistent and indiscernible, leading to inconsistent and incorrect decisions. Second, Plaintiffs allege that FSSA routinely fails to maintain benefits for enrollees who have timely filed appeals of its decisions terminating or reducing benefits and FSSA's standard notices fail to provide clear notice of appeal rights or appeal procedures, and its standard for determining the timeliness of appeals is confusing and ambiguous.

The Court granted the parties' stipulated motion for certification of two plaintiffs' classes. (Doc. 144). Class 1 consists of "[a]ll current and future applicants for or recipients of Medicaid with a 'spend down,' whose income exceeds program eligibility standards". Stipulation to Certification of Cause as Class Action (doc. 141), at 1. The stipulation states that Plaintiffs seek relief for Class 1 under two issues:

> (1) whether Defendants' standard notices (used to deny, reduce or terminate benefits due to excess income) violate Due Process, and (2) whether Defendants' rules and interpretations of Defendants' standard for counting incurred medical expenses violate Plaintiffs' rights under Due Process and federal and state law.

*Id*. at 1-2. Class 2 consists of "[a]ll current and future Medicaid recipients who have received or will receive a notice of action to reduce or terminate benefits". *Id.* at 2. It was stipulated that Plaintiffs seek relief for Class 2 on one issue: "whether Defendants routinely violate the rights of beneficiaries to have benefits continued upon appeal of an adverse action under Due Process

and federal law." *Id.*

Both sides now move for summary judgment. Summary judgment will be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment may be granted on the issue of liability alone, Rule 56(d)(2), and, if summary judgment is not entered on all claims and/or defenses, the court should issue an order specifying the material facts and items of relief that are not genuinely at issue, Rule 56(d)(1).

**Class 1**

Defendants move for summary judgment on the Class 1 claims on the ground that they have been rendered moot by a policy change[4] that eliminated the requirement of showing proof of ongoing or anticipated medical expenses in order to be enrolled in the spend-down program. Now, otherwise eligible applicants with monthly incomes in excess of income limits are enrolled with a spend-down amount. Declaration of Cindy Stamper (doc. 152) at ¶ 7. This policy change has been approved by the two defendants in this case, the heads of FSSA and its Medicaid office, and they have initiated the rule-making process to amend the Administrative Code accordingly. *Id.*, at ¶¶ 8 and 10. FSSA has also revised its relevant policy manuals and informed its caseworkers, supervisors, and other employees of the change. *Id*. at ¶ 9; Declaration of Richard Adams (doc. 153). Once enrolled, a beneficiary's enrollment continues with a spend down

---

[4] The change was implemented on June 16, 2008, the date that FSSA filed its motion for summary judgment and the deadline date for filing dispositive motions. Declaration of Cindy Stamper (doc. 152) at ¶ 6.

5

obligation until one of the other eligibility criteria no longer applies (*e.g.*, asset test or disability status) and FSSA's computer system automatically tracks his medical bills and correlates them with his spend-down amount in order to determine payments.

Defendants contend that the 2008 policy change has rendered the Class 1 claims moot because there is no longer a justiciable controversy.

> It is well established that voluntary cessation of putatively illegal conduct ordinarily will not moot a controversy and prevent its adjudication by a federal court. However, such cessation does render a controversy moot where there is no reasonable expectation that the putatively illegal conduct will be repeated, and there are no remaining effects of the alleged violation. Defendants bear a heavy burden of persuading the court that a controversy is moot.
>
> We note additionally that cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties. According to one commentator, such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine.

*Ragsdale v. Turnlock*, 841 F.2d 1358, 1364-65 (7th Cir. 1988) (citations omitted). See also, *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 565 (7th Cir. 1991) ("When the defendants are public officials, however, we place greater stock in their acts of self-correction, so long as they appear genuine. The crucial inquiry is 'whether there has been complete discontinuance, whether effects continue after discontinuance, and whether there is any other reason that justifies decision and relief.'" (citations omitted)).

Defendants argue that they have shown a genuine voluntary cessation of the policies of which Plaintiffs complain that leaves no reasonable likelihood of reversion, and their new policy comports completely with the standard which Plaintiffs assert is constitutional and ask this Court to impose. In contrast to the informal, unpublicized administrative policy to not enforce state

statutes and regulations that were challenged as unconstitutional in *Ragsdale* that, nonetheless, were held to moot the challenges, FSSA's 2008 policy change has been implemented internally, publicized, and formal rulemaking to promulgate the changes has been initiated. Moreover, where Plaintiffs requested, as part of their relief, that FSSA be compelled to grant presumptive enrollment for any spend-down applicant or recipient demonstrating a "reasonable likelihood of meeting spend-down," the 2008 policy does not require any showing of any likelihood of meeting spend-down to become enrolled. In addition, where Plaintiff sought to require FSSA to evaluate spend-down enrollment through its automated computer system based on already-processed bills and claims rather than "manually" through caseworkers' estimations and speculations, the 2008 policy change means that enrollment does not depend on evaluating applicants' or recipients' proofs of ongoing or anticipated expenses and that post-enrollment evaluation of spend-down utilizations are made through FSSA's automated systems. Finally, because applicants and recipients no longer need to prove — and administrators no longer need to determine — that they expect to have expenses in excess of spend-down obligations as a condition for enrollment, FSSA no longer employs the previous standards, interpretations, or notices of which Plaintiffs complained.

Plaintiffs raise several objections to mootness. They argue that FSSA's June 2008 change is unreliable because (1) it is unaccompanied by a concession by FSSA that its prior policy was unconstitutional or violative of statutes and regulations; (2) it was adopted in haste, in response to the dispositive-motion deadline in this case; (3) the change is part of a broader modernization of FSSA's procedures which is still in progress and flux; (4) there is no quality assurance to disclose whether the change is being implemented effectively; and (5) FSSA has

not bound itself to its new policy which still contradicts existing regulations and has not been incorporated into the federally-approved state Medicaid plan.  With these objections, Plaintiffs focus on *Ragsdale*'s factors that a mooting change must leave no reasonable expectation that the putatively illegal conduct will be repeated and that governmental changes are due more solicitude if they appear genuine.  In sum, Plaintiffs contend that Defendants are not bound to the 2008 change and that the change is not sincere.

While the *Ragsdale* court did note the reason for the defendants' change in policy in that case (concession of its illegality) as an indication of the genuineness of the change and the lack of reasonable expectation of repetition, *Ragsdale*, 841 F.2d at 1365-66, the court did not indicate that concession of illegality is a requirement for mootness and it did not mention a lack of concession by the governmental defendant as an obstacle to finding mootness in its later decision, *Magnuson*, *supra*, where it applied the *Ragsdale* analysis.  We conclude that concession of illegality is not a requirement for finding mootness, but will be considered as one circumstance among the totality indicating whether FSSA's change is genuine and there is a reasonable likelihood of its reversion to the prior policy.[5]

As for the alleged haste and ulterior litigation-advantage motive in FSSA's adopting the policy change on the same date as the dispositive deadline in this case, we find no mention of such coincidences of timing as a separate factor in *Ragsdale* or other decisions.  Defendants responded that the policy change was not developed in haste; that it was intended for adoption regardless of this litigation; that the change was proposed as, at least, a partial settlement in

---

[5] As we note below, FSSA has effectively conceded, by failing to defend, the illegality of its prior policy regarding the Class 1 claims.

discussions with Plaintiffs; but, when those discussions were unsuccessful, it incorporated the change into their summary judgment motion. Plaintiffs have not refuted these assertions and, thus, have failed to convince us that the timing of the policy change indicates either suspicious haste or insincerity by Defendants.

While it is true that FSSA is undergoing an expensive and comprehensive modernization of its procedures and systems, in the midst of which it has also implemented the June 2008 policy change, Plaintiffs have failed to show that the process of modernization risks reversion to the pre-2008 policy. The modernization, in part, involves restructuring of FSSA's computer systems and its procedures for processing claims. The 2008 policy change, by contrast, is an already-accomplished decision to automatically grant enrollment in the spend-down program without requiring proof of ongoing or anticipated medical expenses. The change removes previous procedures and steps from the enrollment process and Plaintiffs have not shown or even described any specific or general, actual or anticipated, problems with implementation of the enrollment policy change, not to mention they have failed to show that any such implementation difficulties threaten reversion to the pre-2008 policy.

Regarding the alleged lack of quality assurance under the 2008 policy, Plaintiffs have failed to show any actual problems with the implementation of the policy. Whether a claim is mooted by a party's voluntary cessation depends on whether there is a reasonable expectation that putatively illegal conduct will be repeated, not that a replacement, putatively legal, policy is not assured to be efficiently or smoothly implemented. Plaintiffs have shown no basis for finding either that problems with the 2008 policy either are reasonably expected or that the effects thereof are reasonably expected to be reversion to the alleged illegalities of the pre-2008

9

policy. Plaintiffs present only mere speculation about the effects of implementation of the 2008 policy.

Finally, Plaintiffs argue that Defendants cannot show that reversion is not reasonably expected because they have not legally bound themselves to the new policy. The old policy is still "on the books" in the regulations and FSSA has not sought to amend the federally-approved state Medicaid plan. The 2008 policy change has been approved by Defendants, the top two decision-makers regarding the spend-down program; it has been incorporated into FSSA's ICES Program Policy Manual; caseworkers, supervisors, and other employees have been informed and instructed about the policy change through written and oral communications; and the process of formally revising the regulations has been initiated. Stamper Declaration; Adams Declaration. In addition, FSSA represented that the state Medicaid plan need not be amended as it does not include the previous enrollment policy and Plaintiffs do not dispute this. In *Ragsdale*, the Seventh Circuit found plaintiff citizens' constitutional challenges to state abortion statutes and regulations to be moot based on defendant administrators'[6] unpublicized and unformalized policy of non-enforcement because there was no reasonable expectation that enforcement would occur in the future, despite the continued presence of the statutes and regulations "on the books." Similarly, in this case, the question is whether, in the totality of the circumstances, there is a reasonable expectation that FSSA will revert to the pre-2008 policy. The actions FSSA has taken to change its policy internally — formalizing it in revisions to its policy manuals, reprogramming its computer systems, publicizing the change, and instructing its employees —

---

[6] Defendants included the county state's attorneys, the state's attorney general, and the director of the state's department of public health.

convinces us that there is no reasonable expectation of reversion. Its formal initiation of the rule-making process to amend the governing regulations confirms this expectation and the genuineness of the change.

Giving the Defendants the solicitude they are due under Seventh-Circuit precedent, we find that there is no genuine dispute that FSSA's 2008 change to its enrollment policy is genuine and that there is no reasonable expectation that FSSA will return to its pre-2008 policy.

Plaintiffs also object that FSSA's policy change does not moot its claims because it raises additional constitutional, statutory, and regulatory concerns. They contend that (1) FSSA's standard notices sent to enrollees approving or denying specific benefits (not enrollment) are still deficient by not providing sufficient notice of the bases of its decisions or the applicable standards, and are unreadable and unintelligible; (2) the notices fail to inform about the treatment of non-claim bills;[7] and (3) the elimination of the enrollment-determination interaction between caseworkers and clients means that FSSA fails to give applicants and recipients adequate information regarding the submission of medical bills, particularly non-claim bills. Regardless of whether these allegations are true, they form no part of the claims reasonably within the scope of the complaint or the class certifications. Regarding the claims of Class 1, the complaint's allegations and claims relate only to FSSA's enrollment determinations involving the spend-

---

[7] Non-claim bills are bills for medical expenses that are not covered by Medicaid (for various reasons, such as they were incurred before the beneficiary was eligible for Medicaid, or they are for services to a spouse whose income is included in the beneficiary's income) but they are, nonetheless, countable toward, or "credited against," meeting the beneficiary's spend down obligation. Because these bills are not payable by Medicaid, providers cannot submit them directly for processing and automatic tracking through its computer system, as they can with covered bills. Beneficiaries must submit (and know to submit) the bills themselves to Medicaid to be credited against their spend down obligation.

down program, specifically the adequacy of its notices of decision, the ascertainability of its standard, and the inherent speculativeness of the enrollment determination; FSSA's decisions regarding individual benefit payments *after* an applicant's enrollment was granted, or a recipient's enrollment status was confirmed on re-evaluation, are outside the scope of the pleadings and the issues in this case. It is too late to add new issues that would significantly expand this case.

Finally, Plaintiffs argue that FSSA's 2008 policy change does not resolve all the issues regarding Class 1, specifically the claims of applicants whose applications for enrollment were denied under the old policy between the time the complaint was filed and the implementation of the new policy in June 2008. In other words, under the *Ragsdale* analysis, there are remaining effects of the allegedly violative policy that are not mooted by the new policy. There is no dispute that, in compliance with Court orders, FSSA previously reinstated all recipients whose enrollments were terminated under the old policy. (Defendants' Supporting Brief (doc. 151) at 12 n. 7; Defendants' Reply (doc. 175) at 7 n. 4). However, no such relief or re-examination was ordered or afforded to applicants who were denied enrollment. Defendants argue that there are no remaining effects of the pre-2008 policy because Plaintiffs seek only prospective relief for applicants and it has complied with the earlier Court orders. (*Id.*)

It is true that the Complaint's prayer for relief does not specifically seek retroactive relief for spend-down applicants who were denied enrollment, Complaint (doc. 1-2) at 13-14, but it does include a residual request for "such other relief as may be indicated and appropriate in the circumstances", *id.* at 14 ¶ 4, and the Complaint contains allegations and claims regarding the violative denial of applications for enrollment under the old policy. While the allegations of a

12

complaint circumscribe the allowable claims in notice pleading, Defendants presented no authority that binds plaintiffs to the relief requested in a complaint. Plaintiffs do request retroactive relief on behalf of denied applicants in their motion for summary judgment, (Plaintiffs' Supporting Brief (doc. 155) at 23),[8] and in their response to Defendants' motion for summary judgment, (Plaintiffs' Response (doc. 169) at 10 and 20). We conclude that retroactive relief on behalf of denied applicants under the old policy is clearly within the scope of the claims and allegations of the Complaint and has not been abandoned or forfeited by Plaintiffs in this case.

It is also clear that FSSA's 2008 policy change, which has prospective effect only, does not moot the claims of members of Class 1 whose applications for enrollment were denied under the old policy. Therefore, we turn to the parties' arguments on Plaintiffs' motion for summary judgment to determine whether there is a genuine dispute of material fact regarding the legality of the pre-2008 policy and, here, Defendants fail to demonstrate a genuine issue of material fact and that Plaintiffs are not due judgment as a matter of law.

Plaintiffs move for summary judgment on the two Class 1 claims of the inadequacy of FSSA's enrollment denial and termination notices and the lack of an ascertainable enrollment standard. They contend that FSSA's standard notices are inadequate because (1) they fail to accurately describe the standard used to make the enrollment decision, (2) they fail to describe

---

[8] Under their section "Nature of Relief Requested for Class I", Plaintiffs request, "[f]or all applicants for Medicaid under the spend-down rules who were denied since the filing of this action, require that Defendants develop a procedure to notify them and redetermine their eligibility for Medicaid." Plaintiffs' brief was filed contemporaneously with Defendants' motion for summary judgment and, therefore. was not a response to Defendants' specific assertion therein that Plaintiffs requested only prospective relief for denied applicants.

the data on which the decision was based and how it was applied against the standard, (3) they fail to explain the reasons for the decision, and (4) the fine print and poor format renders the notices unreadable and unintelligible. Plaintiffs allege that the enrollment standard under the old policy is deficient because the terms "ongoing incurred medical expenses," and "best estimate of ongoing and/or anticipated medical expenses" are undefined in the governing regulation and procedure manuals and are thus inherently vague and ambiguous, leading to inconsistent, arbitrary, and incorrect enrollment decisions. Defendants make a limited response: they argue that (1) the 2008 policy change moots Plaintiffs claims; (2) there is no private right-of-action to enforce 42 C.F.R. § 435.905, the federal rule requiring state agencies to provide eligibility information to applicants; (3) FSSA provides adequate information regarding the spend-down program in its approval notices, availability of a leaflet on request, and availability of caseworkers and specialists to answer inquiries; and (4) Plaintiffs provide no evidence that the print size and format of its notices render them indecipherable and they provide no authority for the proposition that print sizes and formats can violate due-process requirements.

We have found, above, that applicant class members' claims are not mooted by the adoption of the 2008 policy. Second, regardless of whether there is a private right-of-action to enforce 42 C.F.R. § 405.905, Plaintiffs clearly allege that Defendants' notices violate the due-process requirements, not only regulatory requirements, and courts, including this one, have held that due process requires that notices denying Medicaid benefits must explain the reasons therefor and "[c]learly, one of these 'reasons' for denial would be an accurate statement of the

eligibility standard." *Thompson*, 2006 WL 2990426, * 7.[9] The fact that FSSA informs applicants that spend-down leaflets are available, that caseworkers are available to answer questions, or that the spend-down program is explained in its approval (not denial) notices, simply fails to address the due process requirement that the applicable standard be set forth in all of its notices, particularly its denial notices. Defendants did not respond to Plaintiffs' arguments regarding the lack of reasons in its notices, the lack of explanations of the data relied upon, or the lack of definitions and consistency of its standard and the resulting arbitrariness of decisions.[10] Defendants have, therefore, failed to establish the existence of a genuine issue of material fact regarding the legality of their pre-2008 spend-down enrollment notices and standard.

Therefore, Plaintiffs' motion for summary judgment is granted and Defendants' motion is denied on the issue of the legality of Defendants' notices and standards that were employed to deny Class 1 members' applications for spend-down enrollment between the date that the Complaint was filed and FSSA's adoption of the June 2008 policy. The form and substance of

---

[9] We also note that a state court granted partial summary judgment against Defendants regarding the adequacy of their Medicaid spend-down notices, holding, in part, that "Due Process requires that Defendants' notice to beneficiaries list each provider whose charges were reviewed, and for each provider, the particular dates of service, the service description, the amount charged and amount disallowed by Medicaid toward the beneficiary's spend down, and the specific reason for any disallowance of provider's charge, including reference to the law and source of facts used to make the disallowance." *Ringo v. Sullivan*, Cause no. 29D03-0306-PL-555, Order on Plaintiffs' Motion for Partial Summary Judgment (Hamilton Sup. Ct., Feb. 18, 2005) (attached as Exhibit 12 to Plaintiffs Supporting Brief).

[10] We agree with Defendants that Plaintiffs failed to present evidence that the print size and format of FSSA's notices render them unreadable or that due process requires certain font or format styles. Our agreement, however, does not save Defendants as it does not overcome the remaining deficiencies in its response.

the remedy therefor remain unresolved, pending further discussions among the parties and the Court. Defendants' motion for summary judgment is otherwise granted and Plaintiffs' motion denied as they relate to the remaining claims of Class 1 because they are moot.

## Class 2

Class 2 consists of "[a]ll current and future Medicaid recipients who have received or will receive a notice of action to reduce or terminate benefits" and relief is requested as to the issue of "whether Defendants routinely violate the rights of beneficiaries to have benefits continued upon appeal or an adverse action under Due Process and federal law." Plaintiffs claim that Defendants routinely fail to continue benefits pending timely appeals and that their standard notices fail to adequately inform recipients about their right to appeal and the procedures to appeal. Defendants moved for partial summary judgment on the grounds that their stated policy to continue benefits pending appeal is constitutional and legal, and therefore survives a facial challenge; they specifically did not move for summary judgment regarding their implementation of the policy. Plaintiffs apparently concede that Defendants' written policy comports with regulatory requirements, (Plaintiffs' Reply (doc. 169) at 19); their challenge, instead, is to Defendants' practice in failing to enforce or implement this policy.

Plaintiffs move for summary judgment on the Class 2 claims by pointing to, not only the experiences of four of the named plaintiffs, but FSSA's own surveys of appeals in five (out of 92) counties in Indiana showing that benefits were improperly discontinued in 69.77% of the appealed cases, and in only 44.77% of those case were benefits restored at some point before the appeal hearing. In 25% of the cases, benefits were never restored before the appeal hearing. Although Defendants produced these surveys to Plaintiffs in discovery, they argue that the

samples are not representative, are unscientific, and should not be the basis for finding liability or ordering intrusive injunctive relief. They also argue that Plaintiffs' requested relief — that benefits be automatically continued until it is affirmatively determined in each case that an appeal was not timely requested — would work an undue hardship not only on FSSA administration but also beneficiaries who either don't appeal or don't timely appeal but will have to repay any benefits received while FSSA makes individualized determinations whether they filed timely appeals. Further, the fact that appeals are filed in only about three percent of cases highlights the excessive intrusion of Plaintiffs' proposed remedy. Defendants also contend that their notices adequately explain the right to appeal and the means of appeal, and are not indecipherable due to print size, format, and confusion of content.

Finally, Defendants point to the fact that they are in the midst of a massive restructuring and modernization of the Medicaid system, part of which is specifically geared to improving appeals processing and which is partially implemented in certain counties. In addition, in the non-modernized counties, FSSA has taken affirmative steps to ensure that timely appeals are quickly and accurate determined and that benefits are continued pending timely appeals.

Because the administration of the Medicaid appeals system is clearly currently in flux, the survey data on which Plaintiffs rely might not reflect current practice, particularly the effect of FSSA's modernization program and affirmative steps to improve appeals processing, and because the Court is reluctant to enjoin an ongoing self-corrective process, we find that the current briefing on the motions for summary judgment is likely out-of-date and unhelpful to our efforts to resolve the Class 2 issues. Therefore, we deny both motions as moot and direct the parties to confer with the magistrate judge on developing a plan for further proceedings,

including obtaining current data and the status regarding FSSA's appeals processing and, if necessary, the resubmission of these issues to the Court. The Court also directs the parties to clarify formally whether Class 2 issues encompass FSSA's administration of appeals of adverse actions only in spend-down cases or more broadly to include FSSA's adverse actions in all Medicaid matters. If the former, the parties should clarify whether the class includes adverse actions pertaining only to enrollment eligibility before the 2008 changes or includes adverse actions regarding other eligibility factors.[11]

## Conclusion

Defendants' motion for summary judgment and Plaintiffs' motion for summary judgment are each **GRANTED IN PART AND DENIED IN PART**, as set forth above.

Judgment is granted in favor of Defendants on all Class 1 issues on the ground of mootness except for the claims of Class 1 members whose applications for spend-down enrollment were denied between the filing of the Complaint and FSSA's adoption of its new spend-down enrollment policy in June 2008. Judgment of liability is granted in favor of Plaintiffs on these excepted claims. The nature of appropriate relief based on these claims is taken under advisement pending further submissions by the parties. Both parties' motions for summary judgment in regard to Class 2 issues are **DENIED AS MOOT**.

Plaintiffs' motion for oral argument is also **DENIED**.

---

[11] As we read the class definition to encompass only recipients who have received notices to "reduce or terminate benefits," we assume that only eligibility or enrollments decisions are intended, not decisions on particular benefit payments or other matters.

Date:  03/31/2009

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Harry Kennard Bennett
ken@hkbennettlaw.com

Mary Beth Claus
BAKER & DANIELS LLP
marybeth.claus@bakerd.com

Ryan Michael Hurley
BAKER & DANIELS LLP
ryan.hurley@bakerd.com

Lindsay R. Knowles
SEVERNS & ASSOCIATES
lringler@severns.com

Scott Richard Severns
SEVERNS & ASSOCIATES
sseverns@severns.com

Robert K. Stanley
BAKER & DANIELS
rkstanle@bakerd.com