UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| Mary Daugherty et al., | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| | ) | 1:06-cv-00878-SEB-DML |
| vs. | ) | |
| | ) | |
| Gargano et al., | ) | |
| | ) | |
| Defendants. | | |

**ORDER**

Plaintiffs brought this lawsuit pursuant to 42 U.S.C. § 1983 for alleged due process violations associated with the procedures utilized by Defendants in processing Medicaid applications. Importantly for purposes of the various motions presently before the Court [Docket Nos. 278, 281, 293], Plaintiffs have brought this action against Defendants in their official capacities as Secretary of the Family and Social Services Administration ("FSSA") and Director of the Office of Medicaid Policy and Planning ("OMPP"), respectively. By stipulation, the parties have agreed to the certification of two classes: Class 1 originally included "[a]ll current and future applicants for or recipients of Medicaid with a 'spend down,' whose income exceeds program eligibility standards." [Docket No. 144]. The stipulation included Plaintiffs claims for relief for Class 1 under two theories: (1) that Defendants' standard notices (used to deny, reduce or terminate benefits due to excess income) violate Due Process; and (2) that Defendants' rules and

interpretations of Defendants' standard for counting incurred medical expenses violate Plaintiffs' rights under Due Process and federal law. Id. Class 2 includes "all current and future Medicaid recipients who have received or will receive a notice of action to reduce or terminate benefits." The parties stipulate that Plaintiffs' claims for relief for Class 2 relate to a single theory: that "Defendants routinely violate the rights of beneficiaries to have benefits continued upon appeal of an adverse action under Due Process and federal law." Id.

The factual underpinnings of this case were laid out in prior rulings and generally are not in dispute here. See Daugherty v. Roob, 2009 U.S. Dist. LEXIS 27777, 1:06-cv-878-SEB-DML, at *1-6 (S.D. Ind. March 31, 2009). Briefly summarized to facilitate a clear understanding of the instant dispute, the facts reveal that, at the time this lawsuit was originally filed in 2006, Defendants had a policy known as the "spend-down program" by which an individual who otherwise met the eligibility requirements for Medicaid but whose monthly income exceeded the income standard could "spend-down" his or her excess monthly income through incurred medical expenses. In 2006, individuals obtaining benefits through the spend-down program were required to provide verification that their incurred medical expenses exceeded their monthly spend-down obligation. In June 2008, FSSA changed its policy relating to the spend-down program. Specifically, pursuant to the 2008 policy, applicants were no longer required to show ongoing medical expenses in excess of their spend-down limit.

FSSA is obligated, pursuant to 42 C.F.R. § 431.230, to maintain the benefits of a

recipient who files a timely appeal after receiving a notice of either the reduction or termination of benefits. Plaintiffs allege that Defendants consistently fail to implement this policy in a manner comporting with due process. Although Plaintiffs challenge various aspects of Defendants' practices relating to the proper maintenance of benefits pending appeal, their focus is two-fold: First, they challenge the language of the notices sent to members of Class 2 as insufficient to apprise those individuals of their appeal rights and the method by which benefits may be maintained while that appeal is pending. Second, Plaintiffs challenge FSSA's reliance on a computer program, which utilizes a default setting to terminate benefits on the "effective day" unless a caseworker expressly intervenes in the event the applicant files a timely appeal. Defendants admit that there have been instances in which benefits were not properly maintained despite the fact that an applicant had filed a timely appeal. However, they assert that they are engaged in an "on-going self-corrective process that has resulted in measurable improvement" in this regard.

On March 31, 2009, the Court granted in part and denied in part the parties' motions for summary judgment on Class 1 issues. [Docket No. 185]. Because, as discussed above, Defendants made a policy change in June 2008 that "eliminated the requirement of showing proof of ongoing or anticipated medical expenses in order to be enrolled in the spend-down program," the Court entered judgment in favor of Defendants "on all Class 1 issues on the ground of mootness, except for the claims of Class 1 members whose applications for spend-down enrollment were denied between the filing

of the Complaint and FSSA's adoption of its new spend-down enrollment policy in June 2008." Id. at 5, 18.

Judgment on liability was granted in favor of Class 1 Plaintiffs "on the issue of the legality of Defendants' notices and standards that were employed to deny Class 1 members' applications for spend-down enrollment between the date that the Complaint was filed and FSSA's adoption of the June 2008 policy." Id. at 25-26. The Court entered no findings with regard to the Class 2 claims because, in light of the FSSA's modernization effort taking place at that time, we surmised that the summary judgment briefing was likely out-of-date by the time a ruling would be made. Therefore, we denied the parties' motions as moot and directed them to:

> confer with the magistrate judge on developing a plan for further proceedings, including obtaining current data and the status regarding FSSA's appeals processing and, if necessary, the resubmission of these issues to the Court. The Court also direct[ed] the parties to clarify formally whether Class 2 issues encompass FSSA's administration of appeals of adverse actions only in spend-down cases or more broadly to include FSSA's adverse actions in all Medicaid matters. If the former, the parties should clarify whether the class includes adverse actions pertaining only to enrollment eligibility before the 2008 changes or includes adverse actions regarding other eligibility factors.

Id. at 29.

On November 15, 2010, Plaintiffs filed a Motion for Leave to File First Amended Complaint. [Docket No. 278]. In support of that motion, Plaintiffs maintained that over the course of the last four years since their original complaint was filed, Plaintiffs have discovered that Defendants "took several actions to curtail appeal rights of Medicaid

4

beneficiaries." Pl.'s Br. at 3. In light of the quickly approaching May 9, 2011 trial date, Plaintiffs have proposed that the Court address their claims for injunctive relief prior to trial but defer consideration of their new claims until after trial. For the reasons explained below, Plaintiffs' request for leave to amend is <u>DENIED</u>.

On November 22, 2010, Defendants filed a Motion for Partial Summary Judgment. [Docket No. 281]. Defendants contend that the remaining members of Class 1 are entitled to no relief and that any recovery on the part of the Class 2 plaintiffs should be limited to prospective injunctive relief. Plaintiffs oppose Defendants' motion suggesting that this Court order FSSA to re-issue notices to members of both classes. For the reasons detailed below, Defendants' motion for partial summary judgment is <u>GRANTED</u>.

On December 2, 2010, Plaintiffs filed a Second Motion for Summary Judgment, [Docket No. 293], seeking summary judgment on eight "points" relating to the notices of adverse action used at the time of briefing, Defendants' alleged failure to properly maintain benefits pending appeal, and Defendants' alleged failure to consider appeal requests as timely in various circumstances. Defendants oppose Plaintiffs' motion on the various grounds as discussed in more detail below. For the reasons explained below, Plaintiffs' Second Motion for Summary Judgment is <u>DENIED</u>.

**Legal Analysis**

Our analysis of each of the parties' pending motions is set out below. However, as an initial matter, we note that the merits of Plaintiffs' claims are consistently undermined by the fact that the practices challenged by Plaintiffs have, throughout the almost five

5

years since this case was originally filed, been in a state of flux. This leaves Plaintiffs in the unenviable position of either arguing against policies that have already been changed, thereby mooting their arguments or continuously re-creating their lawsuit. Although we are sympathetic to Plaintiffs' dilemma, as with plaintiffs generally, they must at some point commit to a theory of their case, and when that finally occurs, matters outside of the asserted theories of relief are beyond our purview. See, e.g., Hays v. General Elec. Co., 151 F. Supp. 2d 1001, 1006 (N.D. Ill. 2001).

## I. Plaintiffs' Motion for Leave to Amend Complaint

As referenced above, Plaintiffs first requested leave to amend their complaint on November 15, 2010 – more than four years after filing their original complaint and only months before this case is set for trial. Plaintiffs' opening brief fails to cite any authority or provide any compelling reason to grant such leave. Indeed, it was not until reading the proposed amended complaint itself, which was attached as an exhibit to Plaintiffs' brief, that we determined that Plaintiffs are seeking to add claims against ten new defendants in their individual capacities as well as monetary damages for the harm allegedly caused by Defendants to members of Classes 1 and 2. In addition, Plaintiffs seek in their amended complaint to add James Bowman as an additional class representative based on events that allegedly occurred in 2009-2010.

Although Federal Rule of Civil Procedure 15(a)(2) directs that leave to amend a complaint be freely given, Rule 16(b)(4)'s more exacting "good cause" standard applies where, as here, a party seeks to amend pleadings outside the period specified in the case

management plan. Tschantz v. McCann, 160 F.R.D. 568, 570-71 (N.D. Ind. 1995). Pursuant to the case management plan, the parties' deadline "to amend the pleadings and/or to join additional parties" was March 31, 2008. [Docket No. 135]. Plaintiffs have offered no reason for their failure to seek to amend the complaint prior to that deadline, let alone good cause on the basis of which the Court should allow amendments at this late stage in the litigation.[1] Furthermore, even if Plaintiffs were able to establish good cause, we find that allowing Plaintiffs to amend their complaint in the substantial form proposed by them here on the eve of trial and after years of extensive and costly discovery by the parties, Defendants would be greatly prejudiced. Therefore, Plaintiffs' Motion for Leave to File First Amended Complaint is denied.

## II. Defendants' Motion for Partial Summary Judgment

Defendants seek partial summary judgment establishing that the remaining members of Class 1 are not entitled to any relief, and further that only prospective injunctive relief is available to Class 2, pursuant to 42 U.S.C. 1983 and the Eleventh Amendment.[2] Plaintiffs respond that the Court can and should order Defendants to re-

---

[1] In their reply brief, which, as Defendants point out, is an improper place to raise new arguments, Plaintiffs reference regarding Defendants' efforts to "stonewall discovery" and withhold critical information. However, such complaints assuming they are true are more appropriately addressed in the context of resolving discovery disputes, not in a motion to amend the pleadings.

[2] Defendants have argued alternatively that many members of both classes were not harmed at all based on Defendants' alleged constitutional violations. Because we agree with Defendants with respect to their primary argument, we have not addressed this alternative theory.

issue notices to members of both classes in order to mitigate any harm suffered as a result of Defendants' alleged due process violations.

The Eleventh Amendment bars a federal court from awarding damages resulting from a § 1983 claim against any state official sued in his or her official capacity. Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its [Eleventh Amendment] sovereign immunity from suit even though individual officials are nominal defendants")(quoting Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464 (1945)). However, prospective relief directed at preventing future constitutional violations is not barred. Ex parte Young, 209 U.S. 123 (1908). This exception "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." Milliken v. Bradley, 433 U.S. 267, 289 (1977).

In terms of exercising jurisdiction over official capacity defendants, the Seventh Circuit in Lett v. Magnant explained these principles as follows:

> Personhood is an essential element of a § 1983 claim, and in Will v. Michigan Department of State Police, 491 U.S. 58, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989), the Supreme Court held that a state is not a "person" for purposes of § 1983 and therefore cannot be sued in its own name. This reasoning applies to arms of the state, such as state agencies, as well. Id. at 70. Because this action is for prospective relief, however, we reach a different result in regard to the official capacity defendants. As Will observed, 'of course a State official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State,'" id. at 71 n.10 (quoting Kentucky v. Graham, 473 U.S.

> 159, 167, 87 L. Ed. 2d 114, 105 S. Ct. 3099 n.14 (1985)), a distinction which arises out of Ex parte Young, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908) (actions for prospective relief against state officials not within bar of Eleventh Amendment). See Wisconsin Hospital Ass'n v. Reivitz, 820 F.2d 863, 867 (7th Cir. 1987) ("A suit under Ex parte Young envisages a situation in which state officials are being told in effect to leave the plaintiff alone. The relief sought is against the officials; the state treasury is not directly affected."); see also Edelman v. Jordan, 415 U.S. 651, 664-65, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974) (unlike Ex parte Young, where relief was prospective only, suit for retroactive relief against state officials is in essence one against the state because funds to satisfy award must inevitably come from the general revenues of the State).

965 F.2d 251, 255 (7th Cir. 1992).

In determining the permissible scope of the relief sought by Plaintiffs, the Court engages in a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997)(O'Connor, J. concurring)).

Here, Defendants, quite correctly, point out that any request for damages or retroactive payment of Medicaid benefits to either class is barred by § 1983 and the Eleventh Amendment. See McVicker v. Hartfield, 2009 U.S. Dist. LEXIS 74848, at *23-24 (S.D. Ohio, Aug. 6, 2009) ("Because an injunction to provide funds to pay or reimburse plaintiffs for [past acts of denial of eligibility for benefits or past refusals to pay benefits] would require payment from the state treasury, plaintiffs' claims for benefits are barred by the Eleventh Amendment."). Plaintiffs maintain, however, that the only relief they seek is a requirement that new notices be issued by Defendants which fully comply with due process requirements by providing class members a meaningful

9

opportunity to be heard – an opportunity that was previously unavailable to them.

The Supreme Court addressed the availability of notice relief in <u>Green et al. v. Mansour</u>, 474 U.S. 64 (1985). In that case, two classes of plaintiffs brought a lawsuit against the Michigan Department of Social Services claiming that the defendant's calculations of benefits under the federal Aid to Families with Dependent Children violated federal law. Before the case was heard, however, Congress amended the relevant statutes effectively mooting the plaintiffs' claims. The district court thus granted the defendants' motions to dismiss and held that because the remaining claims for declaratory and notice relief related solely to past violations of federal law, they were barred by the Eleventh Amendment. The Supreme Court agreed with the district court's holding, explaining that "[b]ecause 'notice relief' is not the type of remedy designed to prevent ongoing violations of federal law, the Eleventh Amendment limitation on the Art. III power of federal courts prevents them from ordering it as an independent form of relief." 474 U.S. 64, 71 (1985). The Court expressly distinguished the type of notice relief requested in <u>Mansour</u>, i.e. where there was no continuing violation of federal law to enjoin, with notice relief that is "ancillary to the grant of some other appropriate [prospective] relief." <u>Id.</u>

In our March 31, 2009 order, we determined that the claims of the majority of the Class 1 members were moot as a result of the June 2008 policy change enacted by Defendants. Therefore, as in <u>Mansour</u>, we hold here that the notice relief that Plaintiffs seek with respect to the remaining members of Class 1 is barred by the Eleventh

Amendment and, accordingly, no genuine issue of material fact related to Class 1 remains for determination at trial. With regard to potential relief for members of Class 2, notice relief may be warranted following trial but only to the extent that it would constitute a potential ancillary remedy.

### III. Plaintiffs' Second Motion for Partial Summary Judgment

Plaintiffs' Second Motion for Partial Summary Judgment reflects the ongoing difficulty in this lawsuit referenced earlier. Despite the Court's prior order limiting the relevant issues in the case to those raised by the Class 2 plaintiffs as well as a sub-set of Class 1 plaintiffs (specifically, those whose claims fail for lack of remedy as previously discussed), Plaintiffs' motion for summary judgment relies on new evidence and claims unrelated to the continuation of benefits during an appeal of an adverse benefits determination.[3] As noted above, efforts at this late stage in the litigation to expand the issues of the case are improper. Therefore, regarding the eight "points" upon which Plaintiffs seek summary judgment, only the following arguably remain pending as a part of this litigation: (1) the adequacy of the appeal notifications sent to Class 2 plaintiffs as pertaining to their right to appeal and to the continuation of benefits pending appeal; (2) whether Defendants violate the Due Process rights of members of Class 2 when they fail

---

[3]Specifically, Plaintiffs assert that Defendants' standard forms of Notice "remain as deficient as ever." However, with the exception of the claims discussed above, the Court has previously determined that the claims of Class 1 were moot as a result of Defendants' June 2008 policy change. By attempting to insert these issues back into the case, Plaintiffs in effect ask that we reconsider that order in light of developments which have occurred thereafter. We decline to do so since a ruling otherwise would require a substantial expenditure of resources by both the parties and the Court and would result in undue prejudice to Defendants.

to maintain benefits pending appeal for those who file timely appeals; and (3) whether Defendants violate the rights of members of Class 2 when they fail to consider an appeal request as timely, for purposes of continued benefits pending appeal, in several circumstances cited by Plaintiffs.[4]

As to these issues, however, Plaintiffs have failed to establish that no genuine issues of material fact remain. First, the lack of citation to any legal authority in Plaintiffs' brief as well as the limited evidence submitted by Plaintiffs provides an insufficient basis on which the Court is empowered to grant judgment as a matter of law. We note, for example, that Plaintiffs' entire argument relating to the rights of members of Class 2 specifically is confined to the final three and a half pages of their 21 page opening brief. See Pls.' Br. at 18-21. In that scant discussion, Plaintiffs attack the reliability of FSSA data, but then rely on it to show that Defendants' attempts to modernize its procedures pertaining to maintenance of benefits have failed. Even without regard to the evidence proffered by Defendants in an effort to show their improvement in their procedures in this regard, Plaintiffs have failed to establish a lack of genuine issues of material fact such that summary adjudication of this issue is proper and trial can be

---

[4]Specifically, Plaintiffs challenge Defendants' practice of considering an appeal untimely in the following circumstances: (1) the appeal request arrives within three (3) days following the effective date of the action; (2) the appeal request arrives on the next business day when the deadline for the appeal falls on a weekend or holiday; (3) the appeal request arrives by mail with a postmark that is prior to the effective date of the action; (4) the appeal request arrives within 10 days of the date that the recipient was provided with the notice of action; (5) the agency receives an appeal request from a recipient whose benefits have been reduced or terminate but for whom the agency has no record of having issued a Notice of Action.

avoided. In addition, as was true at the time of our March 31, 2009 Order, the initial briefs filed by the parties reflect facts that are no longer accurate, to wit, relating to notices of benefits reduction or termination at times when Defendants' practices were otherwise. As Plaintiffs acknowledged in their reply brief, "Defendants . . . announced a major policy change on the day that its [responsive] summary judgment brief on the topic was due." Pls.' Reply at 8. Both parties filed motions at the end of March seeking leave to supplement the summary judgment record based on updated evidence. [Docket Nos. 353, 355]. The briefing regarding these motions has been completed only in the past few days and includes arguments regarding the ultimate issues to be decided at trial.[5] Third, the parties continue to conduct discovery the results of which may bear on the issues raised in Plaintiffs motion. See Docket No. 359. Thus, we find that the issues Plaintiffs have raised should be resolved at trial and any ruling await the full development of all remaining issues on their merits. Therefore, Plaintiffs' Second Motion for Partial Summary Judgment is <u>DENIED</u>.

**Conclusion**

For the reasons stated above, Plaintiffs' Motion for Leave to File First Amended Complaint [Docket No. 278] is <u>DENIED</u>, Defendants' Motion for Partial Summary

---

[5]The majority of the evidence that the parties seek to add to the summary judgment record is unopposed. Furthermore, we find Plaintiffs' reason for failing to previously supplement the record, i.e. the need to evaluate 1,200 computer files that were difficult to decipher, persuasive. Thus, although we have ultimately decided to deny Plaintiffs' Second Motion for Summary Judgment, the parties' motions for leave to supplement the summary judgment record are granted.

Judgment [Docket No. 281] is <u>GRANTED</u>, and Plaintiffs' Second Motion for Partial Summary Judgment [Docket No. 293] is <u>DENIED</u>. The parties' motions for leave to supplement the summary judgment record [Docket Nos. 353, 355] are <u>GRANTED</u>.

   IT IS SO ORDERED.


Date:_____04/20/2011_____    _____*Sarah Evans Barker*_____
                                     SARAH EVANS BARKER, JUDGE
                                     United States District Court
                                     Southern District of Indiana

Copies to:

Harry Kennard Bennett
ken@hkbennettlaw.com

Anna May Howard
SEVERNS & STINSON LAW FIRM
amh@severns.com

Ryan Michael Hurley
BAKER & DANIELS - Indianapolis
ryan.hurley@bakerd.com

Lindsay R. Knowles
SEVERNS & ASSOCIATES
lringler@severns.com

Harmony A. Mappes
BAKER & DANIELS - Indianapolis
harmony.mappes@bakerd.com

Scott Richard Severns
SEVERNS & ASSOCIATES
sseverns@severns.com

Robert K. Stanley
BAKER & DANIELS - Indianapolis
robert.stanley@bakerd.com